UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS ALFORD, | Case No. 16-cv-04723-HSG |
| Plaintiff, | **ORDER DENYING MOTION TO AMEND AND GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| JP MORGAN CHASE BANK, N.A., | Re: Dkt. Nos. 53, 56 |
| Defendant. | |

Pending before the Court is Plaintiff Nicholas Alford's motion to amend the complaint, Dkt. No. 53, and Defendant JP Morgan Chase's motion for summary judgment, Dkt. No. 56. For the reasons detailed below, the Court **DENIES** Plaintiff's motion to amend and **GRANTS IN PART** Defendant's motion for summary judgment.

I. **BACKGROUND**

A. **Factual Background**

Plaintiff received a loan modification in 2010 for his mortgage, now serviced by Defendant. Dkt. No. 1 ¶ 9 ("Compl."). Plaintiff asserts that as part of that loan modification, the modified principal balance included "all amounts and arrearages that [were] past due as of the Modification Effective Date (including unpaid . . . escrow advances and other costs . . .")." Dkt. No. 63-2, Ex. A at 2 (2010 "Home Affordable Modification Agreement"); *see also* Dkt. No. 63 at 5, 7 (Plaintiff's Opp. to Summary Judgment). Plaintiff contends that pursuant to this language, the modified principal included $38,000 for past due mortgage payments, unpaid property taxes, and homeowners' insurance. Compl. ¶¶ 9, 14. Plaintiff alleges that he timely paid Defendant each month from 2010 through 2013, and in turn, Defendant bore responsibility for paying for Plaintiff's homeowners' insurance and property taxes. Compl. ¶¶ 10–11, 14.

In January 2013, however, Defendant alerted Plaintiff that he owed over $6,000 for "property escrow based on delinquent base tax." *Id.* ¶ 12. As a consequence, Defendant increased Plaintiff's monthly mortgage payment by over $700. *Id.* ¶ 13. In June 2013, after months of investigation, Defendant informed Plaintiff that it had paid the $6,000 to his local tax office for the 2008 tax year. *Id.* ¶¶ 14–21. The disbursement date was January 2013. *Id.*; *see also id.*, Ex. C. In April and June 2014, Defendant informed Plaintiff that his account was short and Defendant was increasing his monthly mortgage payment to account for the difference. *See* Compl. ¶¶ 23–24. In February 2015, Plaintiff's counsel sent two Notices of Error to Defendant, informing Defendant that it had erroneously charged Plaintiff the $6,000 for 2008 taxes, and requesting information about his loan modification and property tax payments. *Id.* ¶¶ 38–41.

Defendant responded that it had contacted the local tax office, which stated Plaintiff's 2008 property taxes were delinquent. *Id.* ¶ 42. Defendant explained that the charges were paid from Plaintiff's escrow account, but the delinquent taxes were not included in the loan modification. *Id.* Several months later, Plaintiff informed Defendant that he had paid the 2008 taxes and the county's past-due notice was in error. Dkt. No. 63-2, Ex. J (check from Plaintiff for 2008 property taxes, dated November 2008); *cf.* Dkt. No. 63-2, Ex. F (email from Defendant regarding contact with county's tax department, suggesting there may be a discrepancy in their records). In December 2015, Defendant paid Plaintiff $6,000 and sent him a 1099 tax form. *Id.* ¶ 44. Plaintiff alleges that as a result of Defendant's conduct, Plaintiff was forced to pay additional income taxes on the $6,000 refund. *Id.* ¶ 45; *see also* Dkt. No. 58-3, Ex. C (identifying $1,600 in erroneous income taxes).

Based on these facts, Plaintiff brings claims against Defendant for violations of the Real Estate Settlement Procedures Act ("RESPA"), the Rosenthal Fair Debt Collection Practices Act ("RFDCA"), and California's Unfair Competition Law ("UCL").

## B. Procedural Background

On December 22, 2016, the Court denied Defendant's Motion to Dismiss as to all of Plaintiff's claims except for the Intentional Infliction of Emotional Distress ("IIED") claim, which Plaintiff had failed to oppose. *See* Dkt. No. 29. Plaintiff did not amend his complaint to state an

IIED claim, and Defendant answered the complaint on January 12, 2017. *See* Dkt. No. 33. And in the parties' joint case management statement, filed on January 31, 2017, Plaintiff stated that he would "not be amending his pleadings." Dkt. No. 36 at 2.

Now pending before the Court are two motions. Plaintiff seeks leave to amend his complaint for the first time, arguing that the amendment merely provides more context for already alleged theories. *See* Dkt. No. 53. And Defendant seeks partial summary judgment, primarily contending that Plaintiff's claims for punitive and emotional distress damages are improper as a matter of law and insufficiently supported by evidence in the record.

## II.    LEGAL STANDARD

### A.    Motion to Amend

As a general rule, leave to amend a complaint should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, the Court must also consider whether the amendment is unduly delayed, would cause Defendant undue prejudice, is sought in bad faith, or is futile. *See Bowles v. Reade*, 198 F.3d 752, 757–58 (9th Cir. 1999). If the Court has "already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad." *See Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

### B.    Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* In deciding if a dispute is genuine, the Court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If the Court finds that there is no genuine dispute

of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

The moving party always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the courts is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts must enter summary judgment in favor of the movant. *Celotex*, 477 U.S. at 323.

## III. ANALYSIS

### A. Motion to Amend

On August 24, 2017, over a year after filing his original complaint, Plaintiff sought leave to amend his complaint to "add additional facts to more thoroughly flesh out the same claims, and

United States District Court
Northern District of California

1    to add exhibits to further that goal." *See* Dkt. No. 53 at 2.  By his own admission, the amended

2    complaint is based on facts that existed before he filed the original complaint. *Id.* at 2.  He

3    concedes that "all the exhibits existed before Plaintiff's original complaint was filed" and that he

4    "is not seeking to allege anything that occurred after [his] original complaint was filed."  *Id.*

5          The Court finds that even under Rule 15's liberal amendment policy, Plaintiff has failed to

6    establish that his proposed amendment is warranted.  Plaintiff has had ample opportunity to amend

7    his complaint since August 16, 2016, when he first filed this action.  *See* Dkt. No. 1.  After

8    granting Defendant's motion to dismiss in part in December 2016, the Court explicitly instructed

9    Plaintiff that he could amend the complaint within 21 days.  Dkt. No. 29 at 4.  He did not do so.

10   Instead, he stated in a subsequent case management statement in January 2017 that he would "not

11   be amending his pleadings."  Dkt. No. 36 at 2.  The Court issued a scheduling order based, in part,

12   on these representations.  *See* Dkt. No. 40.  Plaintiff offers no explanation for the about-face, or for

13   the undue delay in seeking to amend.

14         In addition, the Court finds that the amendment here would cause undue prejudice.  Fact

15   discovery closed in July 2017 and expert discovery closed in August 2017.  *See* Dkt. No. 40

16   (Scheduling Order).  Moreover, Plaintiff filed this motion to amend mere days before the deadline

17   to file dispositive motions.  *Id.*  Defendant did not have an opportunity to oppose the motion to

18   amend before it filed its motion for summary judgment.  To accommodate the amendment, the

19   Court would have to re-open discovery and provide an opportunity for Defendant to re-file a

20   dispositive motion.  The Court has also already continued the pretrial conference and trial dates

21   from January 2018 to April 2018, *see* Dkt. No. 69, and would have to do so again to accommodate

22   Plaintiff's request.  Further delay of the case in this manner is particularly unwarranted where, as

23   here, Plaintiff has known about the facts and legal theories giving rise to his proposed amendment

24   since the case was filed. *Cf. Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d

25   1393, 1398 (9th Cir. 1986) ("[L]ate amendments to assert new theories are not reviewed favorably

26   when the facts and the theory have been known to the party seeking amendment since the

27   inception of the cause of action.").  Consequently, the motion to amend is **DENIED**.

28   ///

**B.    Motion for Summary Judgment**

   **i.    Damages**

   Defendant argues that Plaintiff is not entitled to punitive or emotional distress damages under either RESPA or RFDCPA.

   **a.  Punitive Damages**

   Plaintiff concedes that he is not seeking punitive damages under RESPA.  *See* Dkt. No. 63 at 22 (Opposition).  He only requests punitive damages under RFDCPA, asserting that although only statutory damages are available under the act itself, *see* Cal. Civ. Code § 1788.30(b), punitive damages may nevertheless be awarded "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  *See id.* at 23 (citing Cal. Civ. Code § 3294).  Punitive damages under § 3924 are not available, however, unless the defendant "acted with intent or engaged in 'despicable conduct.'"  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 998 (9th Cir. 2006).  "The adjective 'despicable' connotes conduct that is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people."  *Lackner v. North*, 135 Cal. App. 4th 1188, 1210 (Cal. Ct. App. 2006) (quotation omitted).

   Other courts in this district, as well as California Courts of Appeal, have acknowledged that violations of RFDCPA do not rise to this level of despicable conduct, and punitive damages are therefore unwarranted.  *See, e.g.*, *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 994 (N.D. Cal. 2014) (dismissing request for punitive damages because "it appears that California courts do not find that the Rosenthal Act authorizes punitive damages."); *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 341, n.3 (Cal. Ct. App. 2009) ("It is not disputed that punitive damages are unavailable under the [RFDCPA]").

   Plaintiff's only cases to the contrary involve punitive damages for debt collection practices where the parties have alleged common law invasion of privacy or preclusion from seclusion claims.  *See, e.g.*, *Fausto v. Credigy Servs. Corp.*, 598 F. Supp. 2d 1049, 1057 (N.D. Cal. 2009) (citing *Sanchez v. Client Services, Inc.*, 520 F. Supp. 2d 1149, 1164–65 (N.D. Cal. 2007)).  Moreover, these cases involved determinations that the defendants engaged in threatening or

United States District Court
Northern District of California

harassing behavior.  *Id.* (denying summary judgment for punitive damages where undisputed that the defendant made scores of sometimes anonymous calls to the plaintiffs, threatening to take their home); *see also McFaul v. Bank of Am., N.A.*, No. 5:12-CV-05685-PSG, 2014 WL 232601, at *4–*5 (N.D. Cal. Jan. 21, 2014) (finding volume of collection calls, personal visits, threats, and mischaracterizations of debt "sufficiently threatening or harassing" to withstand summary judgment).   Even if the Court found that punitive damages were available for RFDCPA claims under such circumstances, the facts in this case (even making all reasonable inferences in Plaintiff's favor) do not rise to this level of threatening or harassing conduct.  Rather, Plaintiff asserts that Defendant failed to provide a timely and straightforward explanation about his 2008 property taxes.  *See* Dkt. No. 63 at 23–24.  Plaintiff cites correspondence between himself and Defendant, indicating that Plaintiff's escrow account was short, *see id.*, Exs., P, Q, and Defendant said he was in default, *id.*, Exs, H, R.  Although the Court acknowledges that it took Defendant some time to determine that Plaintiff had actually paid the 2008 property taxes, the Court finds that Plaintiff's evidence simply does not rise to the level of despicable conduct to warrant punitive damages.

### b.  Emotional Distress Damages

Defendant similarly challenges Plaintiff's claims for emotional distress damages under both RESPA and RFDCPA.  The Court acknowledges the ambiguity in the case law regarding the availability of emotional distress damages under both statutes.  Courts disagree as to whether emotional distress damages constitute "actual damages" for purposes of RESPA.  *Compare Hutchins v. Bank of Am. , N.A.*, No. 13-CV-03242-JCS, 2014 WL 722098, at *9 (N.D. Cal. Feb. 25, 2014) (noting that "stress, anxiety and mental anguish . . . do not constitute actual damages" for purposes of RESPA), *with Marquette v. Bank of Am., N.A*, No. 13CV2719-WQH-JMA, 2015 WL 461852, at *13 (S.D. Cal. Feb. 4, 2015) (collecting cases).  Similarly, courts are split as to whether a plaintiff must establish the elements of IIED to recover emotional distress damages under RFDCPA.  *See, e.g.*, *Alonso v. Blackstone Fin. Grp. LLC*, 962 F. Supp. 2d 1188, 1199 (E.D. Cal. 2013) (collecting cases).

Nevertheless, the Court finds it unnecessary to wade into this dispute because, even

assuming that emotional distress damages are available under RESPA and RFDCPA, Plaintiff has not provided sufficient evidence to survive summary judgment. Plaintiff argues that "Defendant's confusion, contradictory answers, continued demands for payments, and failure to resolve what was Defendant's mistake . . . should be more than sufficient evidence to show that he suffered emotional distress attributable to defendant's actions." Dkt. No. 63 at 20. Yet this is merely a description of Defendant's conduct, not Plaintiff's emotional response to it. The only evidence in the record that Plaintiff points to regarding his response to Defendant's conduct is his own testimony that he "[w]ent through a lot of anguish, a lot of lost sleep thinking they're going to foreclose on [his] house." *See, e.g.*, Dkt. No. 63-3, Ex. U at 19:2–15. He repeated that he had "fear of foreclosure." *Id.* at 20:16–21:10.

This evidence is simply insufficient to survive a motion for summary judgment. *Cf. Celotex*, 477 U.S. at 323 ("The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."). Although Plaintiff does not assert an IIED claim here, it is instructive that even "[t]he act of foreclosing on a home (absent other circumstances) is not the kind of extreme conduct that supports an intentional infliction of emotional distress claim." *See, e.g.*, *Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010); *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. July 16, 2010) (holding that absent specific allegations that the lending party asserted its rights to foreclose in bad faith, an IIED claim will not lie in a foreclosure case). Defendant's conduct is even one step removed from these IIED cases: Defendant did not actually foreclose on the home, but Plaintiff claims he feared Defendant would do so if Plaintiff did not make his inflated mortgage payments. The evidence in the record does not support an award of emotional distress damages under either RESPA or RFDCPA.

\*     \*     \*

The Court accordingly **GRANTS** summary judgment as to Plaintiff's claims for punitive and emotional distress damages.

///

### ii. RESPA Violations

Defendant next seeks to preclude Plaintiff from raising any RESPA violations that he did not specifically identify in discovery. *See* Dkt. No. 56 at 13–15. In particular, Defendant states that in his interrogatory responses, Plaintiff claimed statutory damages for seven Qualified Written Requests ("QWR") or Notices of Error ("NOE"). *See* Dkt. No. 58, Ex. C at 2. Yet Plaintiff only provided factual support for four of the seven. *Id.*, Ex. G at 2–3. Defendant offers no legal authority compelling the Court to exclude this evidence through a motion for summary judgment, and the Court declines to do so now. Should Plaintiff attempt to raise new theories of liability or introduce new evidence at trial, Defendant may seek to preclude such evidence under Federal Rule of Civil Procedure 37 at that time. The Court therefore **DENIES** summary judgment on this basis.

### iii. UCL Claims

Defendant also asserts that Plaintiff lacks standing to bring a UCL claim against it. In his opposition, abandons this claim, stating that he "is not pursuing his claim for violation of California Business & Professions Code § 17200." Dkt. No. 63 at 17. Therefore, the Court **GRANTS** summary judgment as to this claim.

///
///
///
///
///
///
///
///
///
///
///
///
///

## IV.    CONCLUSION

Accordingly, the Court **DENIES** Plaintiff's motion to amend the complaint and rules on Defendant's motion for summary judgment as follows:

1. the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's claims for punitive damages and  emotional distress damages;

2. the Court **GRANTS** Defendant's summary judgment as to Plaintiff's UCL claim; and

3. the Court **DENIES** Defendant's motion for summary judgment as to RESPA violations that Plaintiff did not identify during discovery.

The parties have a telephonic conference with Judge Westmore on January 11, 2018, to schedule a settlement conference.  The Court will set a further case management conference if the parties are unable to settle the action.

**IT IS SO ORDERED.**

Dated:   12/27/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge